UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL LEE FINCH,

        Petitioner,                      Case Number: 04-60093

v.                                       HON. MARIANNE O. BATTANI

FABIAN LAVIGNE,

        Respondent.
_____/

## OPINION AND ORDER DENYING
## PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Daniel Lee Finch has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner, who is currently incarcerated at the Chippewa Correctional Facility in Kincheloe, Michigan, challenges his convictions for first- and second-degree criminal sexual conduct. For the reasons set forth below, the Court denies the petition.

### I. Facts

Petitioner's convictions arise out of the sexual assault of Leisa Mick, who was thirteen years old at the time of the trial. Ms. Mick testified that her sister Allison is married to the Petitioner's brother, Kevin Finch. She testified she spent time at Allison and Kevin's apartment, where Petitioner lived for a few months. Ms. Mick stated that Petitioner touched her in a sexual manner many times from 1996 through 1998. She

estimated that he touched her between fifteen and thirty times, possibly as many as sixty times. Ms. Mick remembered only two specific dates on which the touching occurred, December 6, 1996, and April 3, 1998. Ms. Mick testified that, on December 6, 1996, the day of Allison and Kevin's wedding, Petitioner put his hand inside her pajama pants and penetrated her vagina with his finger. She further testified that Petitioner touched her in the same manner sometime around April 3, 1998. She originally thought that this touching episode occurred on April 3, 1998, and testified at the preliminary examination that the touching occurred on that date, but, by the time of trial, she was no longer certain of the April 3rd date. At trial, she testified that this touching episode occurred on the date that her mother and sisters went to see a band play at a local inn and left her in Petitioner's care, but she was no longer certain of the date. Ms. Mick further testified that, on at least one other occasion, Petitioner touched her breasts. She could not recall the date this occurred.

Police Officer Joseph Marsiglia testified that he interviewed Petitioner at the police station on July 7, 1998. Petitioner gave a statement to Officer Marsiglia in which he admitted to touching Leisa, but claimed that Leisa initiated the sexual contact.

Petitioner testified in his own defense. He denied touching Leisa. He testified that his statement to Officer Marsiglia was coerced and that the admissions contained in it were false.

## II.  Procedural History

Following a jury trial in Otsego County Circuit Court, Petitioner was convicted of first- and second-degree criminal sexual conduct.  On February 2, 1999, he was sentenced to fifteen to thirty years imprisonment for the first-degree criminal sexual conduct conviction and seven-and-one-half to fifteen years imprisonment for the second-degree criminal sexual conduct conviction, to be served concurrently.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims:

> I.  The trial court reversibly erred and denied Mr. Finch his constitutional right to due process of law by allowing Mr. Finch's statement to be introduced against him at trial where no <u>Miranda</u> rights were given, even though Mr. Finch was in custody and being interrogated by the police.
>
> II.  Improper and unsubstantiated prior bad act testimony that Mr. Finch sexually abused Leisa Mick over thirty times was erroneously admitted at trial without any foundation, and denied Mr. Finch his United States Constitutional right to due process of law.
>
> III.  Mr. Finch was convicted on insufficient evidence of second degree criminal sexual conduct at trial, in violation of his United States Constitutional right to due process of law.
>
> IV.  The prosecutor denied Mr. Finch his constitutional right to due process of law and a fair trial by improperly vouching for the credibility of his witnesses.
>
> V.  Mr. Finch's sentences of fifteen to thirty years for first-degree criminal sexual conduct and seven-and-one-half to fifteen years for second-degree criminal sexual conduct are disproportionate to this offense and this offender and constitute an abuse of discretion on the part of the sentencing judge.

The Michigan Court of Appeals affirmed Petitioner's convictions and sentences.

People v. Finch, No. 217662 (Mich. Ct. App. Aug. 25, 2000).

Petitioner filed a delayed application for leave to appeal in the Michigan Supreme Court, presenting the same claims presented to the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. People v. Finch, No. 117936 (Mich. March 27, 2001).

Petitioner then filed a motion for relief from judgment in the trial court, presenting the following claims:

    I.       The trial court erred in denying Mr. Finch his constitutional right to due process of law by allowing Mr. Finch's statement to be introduced against him at trial where no Miranda rights were given, even though Mr. Finch was in custody and being interrogated by the police.

    II.      Did defense counsel ineffectively represent defendant by failing to object to the sufficiency of evidence produced at trial, and by refusing to interview an alibi witness and have this witness testify.

The trial court denied the motion for relief from judgment. People v. Finch, No. 98-2314 (Otsego County Circuit Court Apr. 19, 2002).

Petitioner filed applications for leave to appeal the trial court's denial of his motion for relief from judgment in the Michigan Court of Appeals and Michigan Supreme Court. Both state appellate courts denied leave to appeal. People v. Finch, No. 247969 (Mich. Ct. App. Sept. 4, 2003); People v. Finch, No. 124907 (Mich. Apr. 30, 2004).

Petitioner then filed the pending petition for a writ of habeas corpus, presenting the following claims:

    I.       The trial court reversibly erred and denied Mr. Finch his constitutional right to due process of law by allowing Mr. Finch's statement to be introduced

    against him at trial where there was no Miranda rights given, even though Mr. Finch was in custody and being interrogated by the police.

II. Defense counsel ineffectively represented defendant by failing to object to the sufficiency of evidence produced at trial and by failing to investigate the case.

III. The prosecutor denied the defendant his constitutional right to due process and a fair trial by improperly vouching for the credibility of his witnesses and then degrading the testimony of the defendant.

### III. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. Franklin v. Francis, 144 F.3d 429 (6th Cir. 1998). Additionally, this Court must presume the correctness of state court

factual determinations. 28 U.S.C. § 2254(e)(1)[1]; *see also* Cremeans v. Chapleau, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." Id. at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .

---

[1] 28 U.S.C. § 2254(e)(1) provides, in pertinent part:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

6

> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

Id. at 409-11.

With this standard in mind, the Court proceeds to the merits of the petition for a writ of habeas corpus.

## IV. Analysis

### A. Admissibility of Petitioner's Statement

Petitioner claims that his statement to police was improperly admitted at trial because it was involuntarily made. Petitioner argues that his statement was involuntary because police failed to read him his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966), prior to interrogating him. The trial court conducted an evidentiary hearing pursuant to People v. Walker, 374 Mich. 331 (1965),[2] to determine the voluntariness of Petitioner's statement to police. Following the hearing, the trial court determined that the confession was admissible because Petitioner was not in custody at the time the statement was taken.

The last state court to issue a reasoned opinion regarding this claim, the Michigan Court of Appeals, held, in pertinent part:

---

[2] People v. Walker, 374 Mich. 331 (1965) requires that an evidentiary hearing be conducted when a defendant challenges the admissibility of a confession.

Defendant first argues that the trial court should have suppressed a statement he made to a police officer before being read his Miranda[] rights. Defendant contends that suppression was necessary because he made the statement while subject to a custodial interrogation.[] The trial court found that defendant had not been in custody for purposes of Miranda when he gave the statement, and the court subsequently denied defendant's motion to suppress. Whether a person was "in custody for purposes of Miranda is a mixed question of law and fact that must be answered independently after review de novo of the record." People v. Zahn, 234 Mich. App. 438, 449; 594 N.W.2d 120 (1999). However, "[f]actual findings made in conjunction with a motion to suppress are reviewed for clear error." Id. at 445. Moreover,

> [t]o determine whether a defendant was in custody at the time of the interrogation, we look at the totality of the circumstances, with the key question being whether the accused reasonably could have believed that he was not free to leave . . .The determination of custody depends on the objective circumstances of the interrogation rather than the subjective views harbored by either the interrogating officers or the persons being questioned . . .

Here, the questioning officer testified that he (1) merely asked (i.e., did not compel) that defendant come to his office for an interview; (2) told defendant that he was not in custody or under arrest; (3) told defendant that he was free to leave; and (4) did not threaten defendant with incarceration if he refused to confess. Moreover, defendant was not handcuffed or under any other physical restraint during the interview, the office in which the interview took place had no bars or other restraints, and defendant left the police station at the conclusion of the interview. We conclude that under these circumstances, viewed objectively, the trial court did not err in determining that defendant was not in custody for purposes of Miranda when he made the statement at issue.

Defendant contends that he did not feel free to leave during the interview; however, his subjective feeling was not the determinative factor. Id. Defendant additionally contends that the questioning officer (1) did not tell him that he was free to leave, and (2) threatened him with incarceration if he refused to confess. These were disputed issues of fact, however, and the trial court was free to believe the questioning officer's testimony to the contrary. Id. at 445. Accordingly, suppression based on the failure to give

8

Miranda warnings was unwarranted.

Finch, slip op. at 1-2.

The procedural safeguards imposed by Miranda are designed "to safeguard the uncounseled individual's Fifth Amendment privilege against self-incrimination . . . while in police custody." Thompson v. Keohane, 516 U.S. 99, 107 (1995). Custody is determined by examining whether a reasonable person in the suspect's position would believe that he or she was free to leave. Berkemer v. McCarty, 468 U.S. 420, 442 (1984). *See also* Standbury v. California, 511 U.S. 318, 323 (1994) ("[T]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned.").

The state court trial judge, in a unique position to observe the demeanor and assess the credibility of the Walker hearing witnesses, credited the police officer's testimony rather than Petitioner's. Petitioner provides no argument to support a contention that the trial court's determination in this regard was incorrect or unreasonable. This Court concludes that the Michigan Court of Appeals' determination that Petitioner was not in custody when he was questioned by police and that there was no coercive police activity was not an unreasonable application of Supreme Court precedent. Accordingly, Petitioner is not entitled to habeas corpus relief with respect to this claim.

### B.  Alleged Ineffective Assistance of Counsel

In his second claim for habeas corpus relief, Petitioner argues that he is entitled to

9

habeas corpus relief because his trial attorney was ineffective. Specifically, Petitioner argues that his trial attorney was ineffective in failing to investigate the case and failing to call Petitioner's father as a witness.[3]

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. Strickland v. Washington, 466 U.S. 668, 687 (1984). A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." Id. at 689. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687. To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. "[T]he focus should be on whether the result of the trial was 'fundamentally unfair or unreliable.'" Tinsley v. Million, 399 F.3d 796, 802 (6th Cir. 2005), *quoting* Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

Respondent argues that this claim is barred from federal habeas review because it is procedurally defaulted. The doctrine of procedural default provides:

---

[3] In his petition, Petitioner also alleged that his attorney was ineffective in failing to argue that insufficient evidence was presented to sustain the first-degree criminal sexual conduct conviction. Petitioner has withdrawn this claim. *See* Petitioner's Reply Brief, at p. 2. The Court, therefore, will not address this claim.

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman v. Thompson, 501 U.S. 722, 750 (1991).  Such a default may occur if the state prisoner files an untimely appeal, Coleman, 501 U.S. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, e.g., to make a contemporaneous objection, or file a motion for a directed verdict.  United States v. Frady, 456 U.S. 152, 167-69 (1982); Simpson v. Sparkman, 94 F.3d 199, 202 (6th Cir. 1996).  Application of the cause and prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent."  Rust, 17 F.3d at 162; Murray v. Carrier, 477 U.S. 478, 496 (1986).

For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule.  Warner v. United States, 975 F.2d 1207, 1213-14 (6th Cir. 1992), *cert. denied*, 507 U.S. 932 (1993).  Additionally, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim.

Coleman, 501 U.S. at 729-30.  "When a state court judgment appears to have rested primarily on federal law or was interwoven with federal law, a state procedural rule is an independent and adequate state ground only if the state court rendering judgment in the case clearly and expressly stated that its judgment rested on a procedural bar."  Simpson, 94 F.3d at 202.

If the last state court from which the petitioner sought review affirmed the conviction both on the merits, and, alternatively, on a procedural ground, the procedural default bar is invoked and the petitioner must establish cause and prejudice in order for the federal court to review the petition.  Rust, 17 F.3d at 161.

Petitioner raised this claim for the first time on collateral review in state court.  The Michigan Supreme Court denied leave to appeal on the ground that Petitioner "failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)."  Finch, slip op. at 1.  Respondent argues that the Michigan Supreme Court's reliance on M.C.R. 6.508(D) establishes procedural default.

M.C.R. 6.508(D) applies to motions for relief from judgment, and states, in relevant part:

> (D) Entitlement to Relief.  The defendant has the burden of establishing entitlement to the relief requested.  The court may not grant relief to the defendant if the motion
>
> (1) seeks relief from a judgment of conviction and sentence that still is subject to challenge on appeal pursuant to subchapter 7.200 or subchapter 7.300;
>
> (2) alleges grounds for relief which were decided against the defendant in a

> prior appeal or proceeding under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision;
>
> (3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates
>
> (a) good cause for failure to raise such grounds on appeal or in the prior motion, and
>
> (b) actual prejudice from the alleged irregularities that support the claim for relief . . .

M.C.R. 6.508(D).

"Although 6.508(D)(1), (2), and (3) list specific procedural grounds for denying a defendant relief from judgment, these procedural grounds are not the exclusive grounds for which a court may deny relief pursuant to M.C.R. 6.508(D)." Abela v. Martin, 380 F.3d 915, 922 (6th Cir. 2004). Thus, where the Michigan Supreme Court references only M.C.R. 6.508(D) generally as a basis for denying leave to appeal, that reference, without more, is insufficient to establish that the court denied leave to appeal based upon a procedural ground. Id. However, where other "clarifying indicators" clearly demonstrate the state court's intention to invoke an "independent and adequate state procedural rule" by its general reference to 6.508(D), a federal court may determine that federal habeas review is barred. Id. at 923-924. In this case, other clarifying indicators, such as the trial court's addressing the merits of this claim, albeit in a cursory fashion, fail to show that it was the state court's intention to invoke an independent and adequate state procedural rule by its reference to 6.508(D). Thus, the Court finds that the Michigan Supreme

Court's reliance on M.C.R. 6.508(D) is insufficient to establish procedural default, and shall proceed to consider the merits of Petitioner's claim.

The trial court denied this ineffective assistance of counsel claim because Petitioner provided no evidentiary support for his claim that additional witnesses should have been called in his defense. Finch, slip op. at 1-2. Petitioner claims that his attorney failed to interview other witnesses to help discredit the complainant's testimony. Although he argues that counsel should have interviewed "other witness*es*," Petitioner names only one particular witness counsel should have called to testify, Petitioner's father. He states that his father would have testified that Petitioner lived with him from June 1997 through February 1998, and that Petitioner had no contact with the victim during that time period. Petitioner was convicted of first-degree criminal sexual conduct occurring in December 1996 and second-degree criminal sexual conduct occurring on an unspecified date. Therefore, Petitioner's father's testimony that Petitioner had no contact with the victim between June 1997 and February 1998 would have been irrelevant to the two charges of which Petitioner was convicted. Thus, Petitioner cannot show that there is a reasonable probability that had his father testified the outcome of the proceeding would have been different, and habeas relief is denied on this claim.

### C. Alleged Prosecutorial Misconduct

Finally, Petitioner claims that he is entitled to habeas corpus relief because the prosecutor engaged in misconduct when he improperly vouched for the credibility of his

witnesses.[4]  In his opening statement, the prosecutor stated that he investigating officer did a "good job" investigating the case and obtaining a statement from Petitioner.

Respondent argues that this claim is procedurally defaulted.  This Court begins its analysis of whether Petitioner's claim is procedurally defaulted by looking to the last reasoned state court judgment denying Petitioner's claim.  *See* Coleman, 501 U.S. at 729-30.  The last state court to address this claim, the Michigan Court of Appeals held that the issue was not preserved for appellate review because Petitioner failed to object to the opening statement.  Finch, slip op. at 4.  Accordingly, the state court's judgment clearly rested on a procedural bar and the doctrine of procedural default applies.

Therefore, this Court may not review Petitioner's claim unless he has established cause for the default and actual prejudice as a result of the alleged violation of federal law or unless he has demonstrated that failure to consider this claim will result in a fundamental miscarriage of justice.  Coleman, 501 U.S. at 750.

Petitioner claims that his trial attorney's ineffectiveness constitutes "cause."  The Supreme Court has held that "cause" under the cause and prejudice standard must be "something external to the petitioner, something that cannot fairly be attributable to him." Coleman, 501 U.S. at 753.  The Court further held that "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or

---

[4] In his petition, Petitioner also claimed that the prosecutor engaged in misconduct by denigrating Petitioner's testimony.  Petitioner has subsequently withdrawn that claim, *see* Petitioner's Reply Brief at p. 2, and the Court, therefore, will not address it.

15

failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error. . . . Attorney error that constitutes ineffective assistance of counsel is cause, however." Id. at 753-54 (internal citations omitted).

To determine whether his attorney was ineffective in failing to object to the trial court's conduct, the Court considers the merits of Petitioner's claim. Although finding the claim procedurally defaulted, the Michigan Court of Appeals proceeded to consider the merits of this claim. The Michigan Court of Appeals held that the prosecutor's statement that the investigating officer did a "good job" was inappropriate, but that it did not rise to the level of prosecutorial misconduct because it was a "brief, unelaborated" comment. Finch, slip op. at 4.

"Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." Caldwell v. Russell, 181 F.3d 731, 736 (6th Cir. 1999). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances." Angel v. Overberg, 682 F.2d 605 (6th Cir. 1982). The Court must examine "'the fairness of the trial, not the culpability of the prosecutor.'" Pritchett v. Pitcher, 117 F.3d 959, 964 (6th Cir. 1997), (*quoting* Serra v. Michigan Department of Corrections, 4 F.3d 1348, 1355 (6th Cir. 1993)).

The Sixth Circuit has identified the factors a court should consider in weighing the extent of prosecutorial misconduct:

In every case, we consider the degree to which the remarks complained of

> have a tendency to mislead the jury and to prejudice the accused; whether
> they are isolated or extensive; whether they were deliberately or
> accidentally placed before the jury, and the strength of the competent proof
> to establish the guilt of the accused.

Id. at 964 (*quoting* Angel v. Overberg, 682 F.2d 605, 608 (6th Cir. 1982)).

While the Court does not condone the prosecutor's comment, the comment was brief and isolated. Thus, the Court concludes that the state court's decision that this did not constitute prosecutorial misconduct is not contrary to or an unreasonable application of Supreme Court precedent. Therefore, Petitioner's attorney's failure to object to the prosecutor's statement was not ineffective, and Petitioner has not established cause to excuse his procedural default.

This claim is therefore barred from habeas review unless Petitioner can show that failure to consider it will result in a fundamental miscarriage of justice. The Supreme Court explicitly has tied the miscarriage of justice exception to procedural default to a petitioner's innocence. Schlup v. Delo, 513 U.S. 298, 321 (1995). Thus, Petitioner must assert a constitutional error along with a claim of innocence. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Id.* Petitioner has not supported his allegations of constitutional error with new reliable evidence of actual innocence that was not presented to the trial court. Accordingly, this claim is procedurally barred.

17

## V.  Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

s/Marianne O. Battani  
MARIANNE O. BATTANI  
UNITED STATES DISTRICT JUDGE

DATE: <u>October 28, 2005</u>